## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SONIA ORDONEZ,<br><br>           Plaintiff,<br><br>v.<br><br>CANYONS SCHOOL DISTRICT,<br><br>           Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:13-cv-245-DAK-EJF<br><br>District Judge Dale Kimball<br><br>Magistrate Judge Evelyn J. Furse |

On January 19, 2016, pro se Plaintiff Sonia Ordonez filed her Second Amended Complaint against Canyons School District ("the District").  (ECF No. 62.)  Construed liberally, Ms. Ordonez's Second Amended Complaint alleges nine cause of action:  (1) discriminatory and/or retaliatory failure to transfer and/or termination; (2) violation of due process under 42 U.S.C. § 1983; (3) failure to pay overtime as required by the Fair Labor Standards Act ("FLSA"); (4) violation of Titles I and V of the Americans with Disabilities Act ("ADA");  (5) national origin and gender discrimination; (6) disparate treatment; (7) "Discrimination and Harassment – Retaliation;" (8) "Hostile Work Environment – Retaliation;" (9) conspiracy, obstruction of justice, and perjury.  (*See id.* at 5–13.)  The District moves the Court to dismiss Ms. Ordonez's Second Amended Complaint for failure to state a claim upon which the Court can grant relief.  (Def.'s Mot. to Dismiss Pl.'s Am. Compl. ("Mot."), ECF No. 64.)

Having carefully reviewed the Second Amended Complaint, Motion, and parties' memoranda, the Court dismisses Ms. Ordonez's Second Amended Complaint without prejudice with the exception of her retaliatory failure to transfer claim.  Ms. Ordonez's Second Amended Complaint fails to allege sufficient facts to state a plausible claim against the District on any claim other than her retaliatory failure to transfer claim.  Furthermore, Ms. Ordonez's ADA

claim fails because Ms. Ordonez failed to exhaust her administrative remedies before bringing
the claim.

## PROCEDURAL HISTORY

Ms. Ordonez, a former custodian at the District, filed her initial pro se complaint on April
3, 2013.  (ECF No. 4.)  On September 30, 2013, Ms. Ordonez filed an Amended Complaint
alleging claims of discrimination, retaliation, and hostile work environment related to the
District' termination of her employment in April 2011.  (*See* ECF No. 15.)  On December 23,
2013, the District moved to dismiss the Amended Complaint's First and Third Causes of Action–
–disparate treatment discrimination and hostile work environment—for failure to allege plausible
claims.  (ECF Nos. 23 & 25.)  Magistrate Judge Furse recommended dismissal of those causes of
action in a Report and Recommendation issued May 29, 2014, (ECF No. 27), which this Court
later adopted it in its entirety, (ECF No. 35).  Ms. Ordonez's claims of retaliation remained.  (*See*
Am. Compl. 12–14, ECF No. 15.)

Ms. Ordonez subsequently filed a Second Amended Complaint.  (2d Am. Compl., ECF
No. 62.)  The District moves the court to dismiss the Second Amended Complaint for failure to
state a claim upon which the court may grant relief.  (Mot. 1, ECF No. 64.)  The District argues
that Ms. Ordonez fails to offer sufficient factual allegations to make her claims plausible.  (*Id.* at
3–6.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a cause of
action for failing to state a claim for which the court can grant relief.  While Federal Rule of
Civil Procedure 8(a)(2) requires only that a plaintiff make "a short and plain statement of the
claim showing that the pleader is entitled to relief," it nonetheless requires the plaintiff to plead
factual allegations that "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to

relief that is plausible on its face." *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014)

(quoting *Twombly*, 550 U.S. at 547).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In

reviewing a motion to dismiss, the court accepts as true the well-pled factual allegations and

views the allegations in the light most favorable to the plaintiff, drawing all reasonable

inferences in the plaintiff's favor.  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir.

2007) (quoting *David v. City & Cty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).  "[A]

plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC*

*v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).  A

complaint survives only if it "states a plausible claim for relief," though courts recognize that

"[t]he nature and specificity of the allegations required to state a plausible claim will vary based

on context." *Id.* at 1214–15 (quoting *Iqbal*, 556 U.S. at 679).

Because Ms. Ordonez appears pro se, the court liberally construes her pleadings, *e.g.*,

*Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013), but the Court cannot act as Ms.

Ordonez's advocate and make legally cognizable arguments for her, *see, e.g.*, *Garrett v. Selby*

*Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the

responsibility of serving as the litigant's attorney in constructing arguments and searching the

record.").  Although a court holds pro se pleadings "to a less stringent standard than formal

pleadings drafted by lawyers," a pro se plaintiff must "follow the same rules of procedure that

govern other litigants." *Garrett*, 425 F.3d at 840 (quoting *Hall v. Bellmon*, 935 F.2d 1106, 110

(10th Cir. 1991) & *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).  The Tenth Circuit

elaborates:

> if we "can reasonably read the pleadings to state a valid claim on which the
> plaintiff could prevail, [we] should do so despite the [pro se] plaintiff's failure to
> cite proper legal authority, his confusion of various legal theories, his poor syntax
> and sentence construction, or his unfamiliarity with pleading requirements."

*Diversey,* 738 F.3d at 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110).  However, the

Court will not supply additional factual allegations or construct a legal theory on a pro se

plaintiff's behalf.  *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).

## DISCUSSION

### A.  Documents Outside the Pleading

In her opposition, Ms. Ordonez submits four additional "pieces of evidence" in support of

the causes of action in her Second Amended Complaint.  (Pl.'s Resp. to Def.'s Mot. to Dismiss

("Pl.'s Resp.")  1, ECF No. 69; *see* ECF Nos. 69-1 to 69-4.)  "Generally, a court considers only

the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*,

708 F.3d 1141, 1146 (10th Cir. 2013) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir.

2010)).  The Tenth Circuit has noted three exceptions to this general rule: 1) where a complaint

explicitly incorporates a document by reference, 2) where a complaint refers to a document,

central to the claim, and the defendant submits "an indisputably authentic copy," or (3) for

"matters of which a court may take judicial notice."  *Id.* (quoting *Gee*, 627 F.3d at 1186 & *GFF

Corp. v. Assoc'd Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997)); *see Alvarado v.

KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (discussing the same exceptions).

Where "matters outside the pleadings are presented to and not excluded by the court, the motion

must be treated as one for summary judgment." Fed. R. Civ. P. 12(d).  "There is no requirement,

however, that a court automatically convert a motion to dismiss to a motion for summary judgment simply because one or both parties file documents in connection with a motion to dismiss." *PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1227 (D. Colo. 2009).

Ms. Ordonez attached the four additional exhibits to her Opposition, not her Second Amended Complaint.  The Second Amended Complaint does not refer to or incorporate this evidence, and the exhibits do not qualify for judicial notice.  *See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (stating a court may "take judicial notice of its own files and records, as well as facts which are a matter of public record") (quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)).  Thus, the Court did not review the four exhibits attached to Ms. Ordonez's Opposition and declines to recast the District' Motion to Dismiss as one for summary judgment.

However, the Second Amended Complaint specifically references "over 60 pieces of evidence" submitted in this case.  (2d Am. Compl. 12, ECF No. 62.)  Ms. Ordonez attached sixty-five exhibits to her two objections to the Magistrate Judge's prior Report and Recommendation.  (*See* ECF Nos. 31 & 33.)  The Second Amended Complaint contains exhibit sixty-six.  (2d Am. Compl. 16–17, ECF No. 62.)  The Court reads the Second Amended Complaint to specifically incorporate these documents and considers them as part of the Second Amended Complaint in determining the sufficiency of Ms. Ordonez's claims.

## B.  First & Fifth Causes of Action

Ms. Ordonez's First Cause of Action states:

As a part of the reason, by which I am suing for Discrimination to Defendant, in this First Cause of Action, I am suing to Defendant and the respective added parties for violating my right to be transferred to another school, inasmuch as, 4 pieces of evidence not only prove a part of my multiple requests for transfer.  But also, such evidences prove that in multiple occasions my transfer requests were denied, in highly questionable basis.  Even, said evidences strongly infer that the

> Defendant's administrators, decided terminating my employment in open retaliation basis, by the fact that I had filed charges of discrimination on October 18, 2010.

(2d Am. Compl. 5, ECF No. 62.)  Ms. Ordonez's Opposition describes the First Cause of Action as discrimination on the basis of gender and race.  (*See* Pl.'s Resp. 19, ECF No. 69.)  In contrast, the Second Amended Complaint speaks to the District' denial of Ms. Ordonez's "multiple requests for transfer" to another school on a "highly questionable basis," and that the "evidences strongly infer" the District terminated her in retaliation for her filing discrimination charges on October 18, 2010.  (2d Am. Compl. 5, ECF No. 62.)

Ms. Ordonez cites a number of exhibits under the First Cause of Action:  (1) a fax cover sheet and certified mail receipt showing she filed EEOC charges on October 18, 2010, (ECF No. 33-6); (2) a September 2010 transfer request showing Ms. Ordonez requested a transfer because she "would like to work mornings," as well as follow up letters from school officials showing custodial positions for which she applied and interviewed had been filled, dated October 5, 2010, October 9, 2010, November 29, 2010, February 11, 2011, (ECF No. 31-22); (3) a February 2010 letter wherein Ms. Ordonez sought a transfer due to conflict with a co-worker, C.J., (ECF No. 31-12); (4) a November 2010 letter from Ms. Ordonez to a school official requesting transfer to another building, informing that Ms. Ordonez had filed EEOC discrimination charges, and documenting allegedly discriminatory, unsafe, and harassing conduct by C.J. Mullins and Mr. Nelson, the lead custodian, (ECF No. 31-14); and (5) a January 2011 form showing District transferred Allan Setterberg, a former head custodian, to another school, (ECF No. 33-6).  (2d Am. Compl. 5, ECF No. 62.)

Ms. Ordonez's Fifth Cause of Action states:

> Through this fifth cause of action, and as a part of my lawsuit for discrimination to the Defendant, I felt that I was subject to unconstitutional discrimination, by

the fact that I experienced in body and spirit said extreme mistreatment.  Thus, in my humble opinion, I really consider that I was subjected to that extreme mistreatment, just because I look as a vulnerable foreigner female, who barely know her rights, by speaking English with accent and then, they assumed that I was not going to fight legally for my Statutory Rights.  Moreover, the evidence not only infers that the Defendant allows or consents the culture of discrimination at workplace.  By people disagree that immigrants who speak English as a second language have the equal rights that the people born in the U.S. and speak English as a first language.  But also, the Defendant allowing discrimination practices and conspiracy, in order to fire me.  Even, the evidences indicate that Defendant decided joining to the Conspirator, in order to fire me, instead of protecting my Statutory Rights.  I consider that I am a discriminating survivor, this due to the Defendant choose protect to Mick Nelson and Clinton Mullins's dishonest and/or illegal practices using its authority not only for protecting Mr. Mullins's misbehavior, but moreover, for attacking my Statutory Rights.

(2d Am. Compl. 10–11, ECF No. 62.)

Ms. Ordonez cites a number of exhibits within the Fifth Cause of Action:  a document from July 29, 2010 signed by Mr. Setterberg prohibiting contact between Mr. Nelson and Ms. Ordonez, (ECF No. 31-2); a September 20, 2010 police report explaining an incident where Mr. Mullins broke Ms. Ordonez's camera, (ECF No. 31-3); a further police report noting that Ms. Ordonez believed Mr. Mullins intentionally broke her camera and that she felt intimidated by the school administration and Mr. Mullins, (ECF No. 31-4); a January 2010 letter from Ms. Ordonez to Mr. Setterberg reporting that Mr. C.J. Mullins "yelled at me stating that he is 'superior to me in every way,'" which Ms. Ordonez felt constituted harassment and discrimination on the basis of gender and national origin, (ECF No. 31-10); a February 2010 letter from Ms. Ordonez to Mr. Setterberg complaining about Mr. Mullins's "suspicious" actions, (ECF No. 31-11); two February 2010 letters from Ms. Ordonez to Ms. Misty Suarez requesting transfer to another school and complaining about Mr. Mullins's behavior, (ECF Nos. 31-12 & 31-13); a November 2010 letter to Mr. Everett Perry requesting a transfer and reporting harassing, discriminatory, and retaliatory acts, (ECF No. 31-14).

As discussed above, courts construe pro se complaints liberally. *Roman-Nose v. New Mexico Dep't of Human Servs.*, 967 F.2d 435, 436–37 (10th Cir. 1992). Accordingly, "[t]he characterization of the action and the claim for relief by a pro se litigant is not dispositive on the availability of relief in federal court." *Id.* at 437. Affording solicitous consideration to Ms. Ordonez's pro se filings, *see Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007), the Court reads the First and Fifth Causes of Action together as asserting claims of discrimination, including through a hostile work environment and disparate treatment, on the basis of national origin and sex, and/or retaliatory failure to transfer and termination.

"While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Therefore, the Court lays out the elements for claims of discrimination and retaliation and then analyzes the Second Amended Complaint's factual allegations to determine whether Ms. Ordonez pleads sufficient factual allegations to state a plausible claim under each theory.

i. *Discrimination*

In the context of Title VII, a plaintiff may establish a prima facie case of discrimination by showing "that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). The Tenth Circuit expressly noted its "preference for more concise formulations" of the prima facie case, *id.* at 1266 n.1, and emphasized that "[w]hile the elements of a prima facie case 'are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor.'" *Id.* at 1266

8

(quoting *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)).

The elements of a prima facie case for discrimination "vary depending on the context of the

claim and the nature of the alleged conduct." *Id.* at 1266 n.1.

      Generally, a plaintiff sets forth a prima facie case of discrimination on the basis of a

protected class by alleging facts showing "(1) she is a member of a protected class, (2) she

suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she

was treated less favorably than others not in the protected class." *Khalik*, 671 F.3d at 1192.

While Ms. Ordonez need not establish a prima facie case at the motion to dismiss stage, she must

still plead "at least some relevant information to make the claims plausible on their face."

*Khalik*, 671 F.3d at 1193; *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)

(holding that allegations in a complaint "must be enough that, if assumed to be true, the plaintiff

plausibly (not just speculatively) has a claim for relief").

      Ms. Ordonez adequately alleges membership in the protected classes of national origin

(Hispanic) and sex (female). (*See* 2d Am. Compl. 1, 10–11, ECF No. 62.) The exhibits

referenced in the Second Amended Complaint also suggest Ms. Ordonez qualified for her

position based on her sustained employment over several years. The exhibits, read liberally, also

suggest Ms. Ordonez qualified for the lead custodian position since she performed the tasks of

that position while the District filled it. (Ex. 14 at 3, ECF No. 31-14 (cited by 2d Am. Compl. 5,

ECF No. 62).)

      The Court finds that Ms. Ordonez alleges at least two adverse employment actions. "The

Tenth Circuit liberally defines the phrase 'adverse employment action,'" *Sanchez v. Denver Pub.

Sch.*, 164 F.3d 527, 532 (10th Cir. 1998), taking "'a case-by-case approach,' examining the

unique factors relevant to the situation at hand." *Id.* (quoting *Jeffries v. Kansas*, 147 F.3d 1220,

1232 (10th Cir. 1998)); *see also Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003).

First, Ms. Ordonez alleges that the District repeatedly failed to grant her requests to transfer to another school.  (2d Am. Compl. 5, ECF No. 62; ECF No. 31-22.)  "If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer adverse employment action." *Sanchez*, 164 F.3d at 532 n.6.  For purposes of this motion to dismiss a pro se plaintiff's complaint, the Court finds that Ms. Ordonez has sufficiently pled that at least one of her requested transfers would have significantly improved her conditions of employment.  (2d Am. Comp. 5, ECF No. 62 (citing ECF No. 31-22 (reflecting Ms. Ordonez held the Assistant Custodial position and made at least one application to transfer to the Lead Custodial position).  Second, the District terminated Ms. Ordonez's employment, an event that clearly constitutes an adverse employment action.  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) ("We conclude that Plaintiff suffered adverse employment action when Defendant terminated her.")

However, Ms. Ordonez's allegations fail to state that the District treated her less favorably than others not in the protected class.  Ms. Ordonez identifies instances of alleged harassing conduct and discriminatory treatment by her co-worker Mr. Mullins and lead custodian Mr. Nelson in the exhibits attached by reference to the Second Amended Complaint that the Court reads as alleging a hostile work environment claim.  (*See* ECF Nos. 31-10 (complaint letter from January 2010), 31-12 (complaint letter from February 2010), 31-14 (complaint letter from November 2010).)  However, the Court previously dismissed Ms. Ordonez's discrimination claims, including her hostile work environment claim, after reviewing these same exhibits, noting that while the record showed "disagreeable" conduct by Ms. Ordonez's co-workers, Ms.

Ordonez's "specific allegations include statements too vague to demonstrate or infer discrimination." (Order Affirming & Adopting Report & Recommendation 2, ECF No. 35.) The Court further stated: "While [Ms. Ordonez] did not get along with her co-workers, there is no evidence that it was the result of any discriminatory animus . . . and does not provide the basis for a discrimination claim or a hostile work environment claim." (*Id.*) Once again, Ms. Ordonez bases her discrimination claims on vague statements and conclusory allegations that the court may not accept as true. *See Khalik*, 671 F.3d at 1193; *Hall*, 935 F.2d at 1110 (stating plaintiff has burden of alleging sufficient facts underlying legal claim); *see also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995) (observing that "even pro se litigants must do more than make mere conclusory statements regarding constitutional claims"). Thus the Court finds that the Second Amended Complaint does not state a plausible claim for discriminatory termination based on disparate treatment or hostile work environment.[1]

The Court reads the allegations of the Second Amended Complaint as an attempt to state a claim of discriminatory failure to transfer based on Ms. Ordonez's national origin and/or gender. In pleading disparate treatment in an employer's failure to hire, transfer, or promote, a plaintiff must allege facts showing (1) she applied for an available position; (2) she qualified for the position; and (3) the employer rejected her under circumstances giving rise to an inference of unlawful discrimination. *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 448–49 (10th Cir. 1981). To allege that the defendant's failure to hire, transfer, or promote gives rise to an inference of discrimination the Second Amended Complaint must make plausible the conclusion that the defendant made the decision at issue based on considerations of impermissible factors.

---

[1] For a more thorough explanation of the law related to the hostile work environment claim, see the earlier Report and Recommendation in this case. (Report and Recommendation 5-6, ECF No. 27.)

*Id.* "A plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of showing that the comparison is legally relevant—i.e., that the employees were similarly situated." *Hysten*, 296 F.3d at 1182.

Drawing all reasonable inferences on Ms. Ordonez's behalf, the exhibits referred to in Ms. Ordonez's Second Amended Complaint show that Ms. Ordonez applied for a number of available custodial positions at other locations. (*See, e.g.*, ECF Nos. 31-14 & 31-22.) However, neither the Second Amended Complaint nor the exhibits referenced therein allege that the District rejected her application to those positions in circumstances giving rise to an inference of discrimination. Ms. Ordonez alleges in the Second Amended Complaint that the District preferentially granted former head custodian Mr. Setterberg's transfer to another school. (*See* 2d Am. Compl. 5, ECF No. 62; ECF No. 33-6.) However, no allegation states Mr. Setterberg's membership or lack thereof in the protected classes. The Court can assume he is not a member of the protected class of females. Nonetheless, no allegation shows Mr. Setterberg applied for positions for which the District rejected Ms. Ordonez or otherwise explains how Mr. Setterberg's alleged transfer gives rise to an inference of discriminatory animus in District's failure to transfer Ms. Ordonez. Nor does the Second Amended Complaint allege Mr. Setterberg qualifies as a similarly situated employee or "why she believed [his transfer] was connected with discriminatory animus." *Khalik*, 671 F.3d at 1194; *see Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1182–83 (10th Cir. 2002) (finding plaintiff did not meet his prima facie burden to show discriminatory animus because "the two employees were not in sufficiently similar circumstances to support an inference of discrimination based on their different treatment"). Indeed, the opposite—Ms. Ordonez alleges Mr. Setterberg held a head custodian position, (2d Am. Compl. 5, ECF No. 62), and that Ms. Ordonez held an assistant custodian

position, (Ex. 22 at 1, ECF No. 31-22, referenced in 2d Am. Compl. 5, ECF No. 62).  Thus, the pleading itself suggests the two were not similarly situated.  Without more, Ms. Ordonez's conclusory allegations that Mr. Setterberg's transfer "occurred in open preferential treatment" or "in unequal basis" do not raise a plausible inference of discriminatory animus.  (2d Am. Compl. 5, ECF No. 62; *see Khalik*, 671 F.3d at 1193–94.)

In sum, the Court finds that Ms. Ordonez fails to state a claim of protected class discrimination because she does not plead allegations showing that the District's failure to grant her transfer requests and termination of her employment occurred under circumstances giving rise to an inference of discrimination.  The Court also finds that Ms. Ordonez has failed to modify her allegations sufficiently to state a hostile work environment claim.

### ii.   Retaliation

Additionally, the Court reads Ms. Ordonez's First Cause of Action as one for retaliatory failure to transfer and/or retaliatory discharge for complaints Ms. Ordonez made both to the District internally and to the EEOC regarding hostile work environment and disparate treatment discrimination based on national origin and sex.  (*See* 2d Am. Compl. 5, ECF No. 62.)  Title VII prohibits an employer from retaliating against an employee because she has opposed an employment practice based on Title VII discrimination.  *Khalik*, 671 F.3d at 1192 (citing 42 U.S.C. § 2000e–3(a)).  "A meritorious retaliation claim will stand even if the underlying discrimination claim fails."  *Sanchez*, 164 F.3d at 533.  "To state a prima facie case for retaliation under Title VII, a plaintiff must show '(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'"  *Khalik*, 671 F.3d at 1193 (quoting *Twigg v. Hawker Beechcraft*

13

*Corp.*, 659 F.3d 987, 998 (10th Cir. 2011)).  Nevertheless, at the motion to dismiss stage, the plaintiff need not establish her prima facie case; she need only state a plausible claim.  *Khalik,* 671 F.3d at 1192.

Ms. Ordonez alleges that she engaged in protected opposition to discrimination by filing EEOC charges on October 18, 2010.  (2d Am. Compl. 5, ECF No. 62.)  Previously, Ms. Ordonez also made internal complaints to District about discrimination and a hostile work environment based on her gender and national origin.  (ECF Nos. 31-10, 31-14.)  Internal complaints constitute protected opposition to Title VII discrimination.  *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1213 (10th Cir. 2008) (noting informal complaints to superiors constitute protected activity).  Hence, Ms. Ordonez pled her involvement in protected activity.

As to actions a reasonable employee would find materially adverse, the District allegedly denied Ms. Ordonez's transfer requests in February 2010, September 2010, October 2010, November 2010, and February 2011.  (*See* ECF Nos. 31-12, 31-14, & 31-22.)  In the context of a Motion to Dismiss a pro se complaint, the Court finds that Ms. Ordonez sufficiently alleged that a reasonable employee would view at least some of the denials of her requests for transfer as materially adverse action.  Additionally, Ms. Ordonez alleges that the District terminated her employment in "open retaliation basis."  (2d Am. Compl. 5, ECF No. 62.)  Reasonable employees find termination of employment materially adverse.  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).  Thus, Ms. Ordonez has alleged adverse employment action.

Regarding a causal connection between Ms. Ordonez's informal complaints starting in January 2010 or her filing EEOC charges in October 2010 and Mr. Mullins' harassing behavior or the District's denial of her transfer requests and subsequent termination, the Court considers

14

the documents referenced in the Second Amended Complaint.  "While [the courts] do not

mandate the pleading of any specific facts in particular, there are certain details the Plaintiff

should know and could properly plead to satisfy the plausibility requirement."  *Khalik*, 671 F.3d

at 1194.  For example, a complaint must establish a "nexus between the person(s) to whom [the

plaintiff] complained and the person who fired her," and "sheer speculation" linking the

allegedly retaliatory actions "to a discriminatory or retaliatory motive" will not suffice.  *Id.* at

1194.

      As to the District's retaliatory failure to grant the transfer requests, the Second Amended

Complaint does not allege explicitly that the persons to whom Ms. Ordonez appears to make the

transfer requests—Scott Cowdell, custodial coordinator, or Paul Kirby, assistant principal, (ECF

No. 31-22)—knew of her protected activity, i.e., EEOC charges and informal internal complaints

of gender and national origin discrimination.  (2d Am. Compl. 5, ECF No. 62.).  However, the

February 11, 2011 rejection letter from Mr. Cowdell came approximately one month after Ms.

Ordonez copied him on a letter setting forth her claims of gender and national origin

discrimination.  (*C.f.* Ex 22, ECF No. 31-22 at 6 *with* Ex. 39, ECF No. 33-6.)   Temporal

proximity of a month and a half will suffice to state causation in a retaliation claim at the motion

to dismiss stage.  *Dunn v. Shinseki*, 71 F. Supp. 3d 1188, 1192 (D. Colo. 2014); *see accord

Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1171-72 (10th Cir. 2006) (finding six weeks

sufficiently close to establish causation in the prima facie case at summary judgment).

Therefore, the Court finds that Ms. Ordonez has stated a plausible claim for retaliatory failure to

transfer based on her request to transfer denied on February 11, 2011, by Scott Cowdell.

      As to her discharge, Ms. Ordonez does not identify who terminated her.  While the record

contains a February 25, 2011 letter from the executive director of human resources placing Ms.

Ordonez on paid administrative leave pending an investigation into her "insubordination and unprofessional and disruptive conduct," (Ex. 50, ECF No. 33-8), neither the pleadings nor the exhibits elaborate on the circumstances following the investigation and leading to her termination in May or June 2011.  Another exhibit indicates that the District placed Ms. Ordonez on paid administrative leave directly after Ms. Ordonez took an absence from work on February 24 and 25, 2011, after the Canyon's had denied her leave request for failure to submit an original signed doctor's note.  (*See* Ex. 49, ECF No. 33-8.)

Exhibits referenced in the Second Amended Complaint show that Ms. Ordonez complained of harassing and discriminatory conduct based on gender and national origin internally to her supervisor Mr. Setterberg and District management in 2010 and 2011.  (*See, e.g.*, ECF Nos. 31-10, 31-14, 33-6.)  But Ms. Ordonez fails to plead a nexus between the persons to whom she complained—including Ms. Suarez and Mr. Setterberg—and the person who ultimately fired her, whom she does not identify but does not appear to include Ms. Suarez or Mr. Setterberg.   (*See* ECF No. 33-9; *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1193 (10th Cir. 2002) (noting that to establish a causal connection a plaintiff must allege the individuals who retaliated knew or should have known that plaintiff participated in a protected activity); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (observing that "[a]n employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition").)  Without such an allegation, the Second Amended Complaint fails to raise a plausible inference of retaliatory motive for the termination.

Therefore, the Court grants the District's Motion to Dismiss the First Cause of Action with respect to retaliatory termination but denies the District's Motion to Dismiss the First Cause of Action with respect to the February 2011 denial of transfer.

## C. Second Cause of Action

The caption to Ms. Ordonez's Second Cause of Action states that the District deprived Ms. Ordonez of a property interest without due process in violation of 42 U.S.C. § 1983. (2d Am. Compl. 5, ECF No. 62.) Ms. Ordonez contends that the District terminated her in violation of District's "own guidelines pursuant to Utah's Public Education Human Resource Management Act, Utah Code § 53A-8a-501 et seq., [which] requires school districts to 'establish procedures for dismissal of employees in an orderly manner without discrimination.'" (*Id.* at 6.) Ms. Ordonez alleges that the District failed to provide "a full and fair termination hearing" prior to her termination and also violated her right to contact eyewitnesses while she challenged her termination. (*Id.* at 6–7.)

To state a § 1983 due process claim, Ms. Ordonez must allege that the state deprived her of a protectable liberty or property interest without sufficient notice and/or an opportunity to be heard. *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Read generously, the Second Amended Complaint alleges that the District, a public school district, deprived Ms. Ordonez of her property interest in her position as a custodian without due process by violating its own statutory guidelines, included under Utah Code § 53A-8a-501 to 506—the Utah Orderly School Termination Procedures Act ("the Orderly Termination Act"). (2d Am. Compl. 5–6, ECF No. 62.) More specifically, Ms. Ordonez complains that the District did not permit her to speak with eyewitnesses, (*id.* at 6; *see* Ex. 50, ECF No. 33-8), and did not grant her request to

extend the termination hearing based on a physician's note that she could not attend, (2d Am. Compl. 7, ECF No. 62).

To prevail on her procedural due process claim, Ms. Ordonez must show she possessed a protected property interest. *See Teigen*, 511 F.3d at 1078.  A protected property "interest arises not from the Due Process Clause of the Constitution itself, but is 'created by independent sources such as state or federal statute, a municipal charter or ordinance, or an implied or express contract." *Id.* at 1079.  Ms. Ordonez must plead "an 'entitlement to a substantive right or benefit' supported by 'rules or mutually explicit understandings ... that [s]he may invoke at a hearing.'" *Id.* (quoting *Robbins v. U.S. Bureau of Land Mgmt.,* 438 F.3d 1074, 1085 (10th Cir. 2006)).  Ms. Ordonez does not plead or attach any written or implied agreement between her and the District that might create a reasonable expectation of continued employment; therefore, the Court looks to the Orderly Termination Act to determine what protection it provides.

The Orderly Termination Act distinguishes between "career employees," "provisional employees," and "temporary employees," according different procedural protections to each. *See* Utah Code §§ 53A-8a-102 & 502.  However, Ms. Ordonez does not plead her employee status under the Orderly Termination Act, or attach any exhibit that would illuminate her classification as a career, provisional, or temporary employee.  Further, the Tenth Circuit has held that the Orderly Termination Act provides "some limited procedural protections to school employees" but "that procedural protections alone do not create a claim of entitlement to continued public employment.  Rather, a legitimate claim of entitlement to continued public employment arises only when there are substantive restrictions on the ability of the employer to terminate the employee." *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1129 (10th Cir. 2001).  Thus, the Court must look to any substantive protections present in agreements between

18

the employer and employee's association or district practice or policy.  *Id.*  Ms. Ordonez does

not plead any agreement with District and does not attach District's termination policies and

procedures.  Without this information, the Second Amended Complaint fails to allege what

process the District owed Ms. Ordonez in terminating her employment and why.  The exhibits

suggest the District provided Ms. Ordonez with notice of an investigation into her employment,

(Ex. 50, ECF No. 33-8), and conducted a subsequent hearing prior to her termination that Ms.

Ordonez could not attend due to illness, (2d Am. Compl. 7–8, ECF No. 62).  Without factual

allegations regarding an agreement between the parties or the type of position Ms. Ordonez held

under the Orderly Termination Act, Ms. Ordonez fails to allege a plausible property interest.

Therefore, the Court dismisses Ms. Ordonez's Due Process claim for failure to state a claim upon

which the Court can grant relief.

### D.  Third Cause of Action

Ms. Ordonez also alleges that the District failed to pay her overtime as required by the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a).[2]  The District asserts that Ms. Ordonez

pleads this claim "too late" because it argues the claim does not appear in her original complaint

and does not relate back to the original pleading under Rule 15(c).  (Mot. 4, ECF No. 64.)

"While the statute of limitations is an affirmative defense, when the dates given in the complaint

make clear that the right sued upon has been extinguished, the plaintiff has the burden of

establishing a factual basis for tolling the statute."  *Aldrich v. McCulloch Properties, Inc.*, 627

*F.2d 1036, 1041 n.4 (10th Cir. 1980)*.

---

[2] Ms. Ordonez cites 20 U.S.C. § 207(a) in support of her claim for FLSA overtime pay.
However, the United States Code locates labor standards at Title 29 and, more specifically, fair
labor standards at 29 U.S.C. §§ 201–219.  Therefore, the Court looks to those sections in
analyzing this cause of action.

Under 29 U.S.C. § 255(a), employees must bring unpaid overtime claims within two years of the FLSA violation, unless the employee can show an employer willfully violated the FLSA, upon which a three-year period of limitation applies. *Mumby v. Pure Energy Servs., Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011). The District terminated Ms. Ordonez in May or June 2011. (2d Am. Compl. 7-8, ECF No. 62.) Ms. Ordonez did not assert any FLSA overtime claim until filing this Amended Complaint on January 19, 2016, well after the three-year limitations period would have run. (*Generally id.*)

Equitable tolling allows the district court, in its discretion, to toll the statute of limitation and "is read into every federal statute, including the FLSA." *Stransky v. HealthONE, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012). However, courts should rarely engage in equitable tolling and likely only when the failure to meet the deadline fell outside of the litigant's control. *Id.* (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-62 (6th Cir. 2000). "In the appropriate case, exceptional circumstances may justify tolling a statute of limitations." *Alexander v. Oklahoma*, 382 F.3d 1206, 1219 (10th Cir. 2004). Ms. Ordonez does not assert, and the Court does not find, any exceptional circumstances to justify tolling the statute of limitations here.

Ms. Ordonez argues that this cause of action is the same as her fifth cause of action in her First Amended Complaint. (Pl.'s Resp. 21, ECF No. 69.) Ms. Ordonez did include a cause of action in her First Amended Complaint captioned "Unpaid vacations and/or wages, or damages to my property at work place," with no specific allegations included therein or any claim for relief related to overtime wages. (1st Am. Compl. 14–15, ECF No. 15.) Instead, the First Amended Complaint seeks relief on her claims for discrimination, hostile work environment, and retaliation leading to and resulting in her termination. (*See generally id.*) Ms. Ordonez

20

references her Charge of Discrimination, but this exhibit does not make any apparent claim for unpaid overtime wages.  (*See* Ex. 47, ECF No. 33-7.)  Indeed, the exhibit, like the First Amended Complaint, focuses on Ms. Ordonez's claims for discrimination, wrongful termination, and retaliation against the District.  (*See generally id.*; ECF No. 15.)  None of these allegations put the District on notice of a failure to pay overtime claim.

The District further argues that Ms. Ordonez's overtime claim does not even relate back to her First Amended Complaint.  (*See* Mot. 4, ECF No. 64.)  Federal Rule of Civil Procedure 15(c) states "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ."  Fed. R. Civ. P. 15(c)(1)(B).  The relation back doctrine seeks "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits."  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).  The Tenth Circuit has stated that the Complaint's value in notifying a defendant of the claims asserted against it for purposes of relation back lies in "the content of the allegations, not the phrases employed," matters.  *McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 730 (10th Cir. 2011) (unpublished).

In her First Amended Complaint, Ms. Ordonez alleges in her "general allegations" that the District denied her overtime, gave overtime to Mr. Mullins instead, and paid her with "comp time" rather than overtime, as required by state and federal law.  (1st Am. Compl. 7, ECF No. 15.)  Neither District's refusal to allow Ms. Ordonez to work overtime nor its attempt to pay Ms. Ordonez in "comp time" necessarily constitutes a violation of the FLSA.  The FLSA permits states and their political subdivisions to offer their employees, "in lieu of overtime

compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section." 29 U.S.C. § 207(o)(1); *Christensen v. Harris Cty.*, 529 U.S. 576, 578 (2000) ("States and their political subdivisions may compensate their employees for overtime by granting them compensatory time or 'comp time,' which entitles them to take time off work with full pay."). Additionally, Ms. Ordonez's claim that the District allowed Mr. Mullins to work overtime and not her would not violate 29 U.S.C. § 207(a). (2d Am. Compl. 9, ECF No. 62.) Thus these allegations did not disclose conduct that would give rise to a failure to pay overtime claim. Thus, Ms. Ordonez's claim for unpaid overtime does not relate back to the conduct alleged in the First Amended Complaint. Therefore, the Court dismisses Ms. Ordonez's Third Cause of Action as time-barred.

### E. Fourth Cause of Action

Ms. Ordonez next alleges that the District violated her rights under Titles I and V of the ADA by failing to allow her to work from home when sick and exacerbating her Post Traumatic Stress Disorder ("PTSD") due to the hostile work environment. (*See* 2d Am. Compl. 9–10, ECF No. 62.) The Court construes this claim as one for failure to accommodate Ms. Ordonez's disability and assumes Ms. Ordonez's PTSD disables her. However, the Court finds that Ms. Ordonez failed to exhaust her administrative remedies before bringing this ADA claim.

To state a failure-to-accommodate claim, a plaintiff must plead facts that allege: "(1) she is disabled; (2) she is 'otherwise qualified'; and (3) she requested a plausibly reasonable accommodation." *See Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012) (stating elements in the summary judgement context) (citing *Woodman v. Runyon*, 132 F.3d 1330, 1344 (10th Cir. 1997)). Additionally, "[t]itle I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir.

2007).  Exhaustion of administrative remedies serves as a condition precedent to suit.  *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035–36, 1042 (10th Cir. 2015).  "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  Courts "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim."  *Jones*, 502 F.3d at 1186.

The Charge of Discrimination Ms. Ordonez references does not include any claim of disability.  (*See* Ex. 47, ECF No.  33-7.)  Ms. Ordonez does not claim her disability claim fell within the scope of her EEOC charge or that she properly exhausted her administrative remedies as required under the ADA.  (Pl.'s Resp. 22-23, ECF No. 69.)  Ms. Ordonez's referenced documents make no showing that she actually challenged the District's failure to accommodate her disability in her EEOC filing. (Ex. 47, ECF No. 33-7.)

Because Ms. Ordonez failed to exhaust her administrative remedies under the ADA, the Court dismisses Ms. Ordonez's Fourth Cause of Action.

**F.  Sixth Cause of Action**

Ms. Ordonez fails to title or caption her Sixth Cause of Action but bolds the words "treating [me] different compared to the rest of my co-workers."  (2d Am. Compl. 11–12, ECF No. 62.)  Therefore, the Court construes the Sixth Cause of Action as a claim for violation of Ms. Ordonez's rights under the Equal Protection Clause.  Ms. Ordonez complains that the District failed to replace the former lead custodian in a timely fashion forcing her to "take charge" of the work for two months without additional compensation or benefits.  (*Id.* at 11.)  However, Ms. Ordonez does not explain how her assumption of extra work for a period of time constitutes an

equal protection violation.  Nor does she plead the characteristics of any other employees to establish they are similarly situated to Ms. Ordonez or how the District categorically treated her protected class differently from those other employees.  *See Robbins*, 519 F.3d at 1253 (noting "plaintiffs' open-ended allegations provide no suggestion as to what the grounds for an equal protection violation might be").  Where "the complaint encompasses a broad range of imaginable circumstances, only some of which, if any, would entitle the plaintiffs to relief," the pleading "stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 546); *see Associated Gen. Contractors, Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (noting courts may not assume a plaintiff "can prove facts that [she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged").

Ms. Ordonez does allege disparate treatment between her and her co-worker Clinton Mullins (C.J.), suggesting a class-of-one equal protection claim.  "[T]he 'paradigmatic' class-of-one case arises when 'a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive.'"  *Planned Parenthood Ass'n of Utah v. Herbert*, No. 15-4189, ___ F.3d ___, 2016 WL 3742008, at *6 (10th Cir. July 12, 2016) (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006)).  However, an employee may not plead class-of-one theory in the public employment context, where employers have "broad discretion" to treat similarly situated employees differently based on "a wide array of factors that are difficult to articulate and quantify."  *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 604–05, 607–08 (2008) (reasoning that the Equal Protection Clause does not apply in the public employment context where "government employers are alleged to have made an

24

individualized, subjective personnel decision in a seemingly arbitrary or irrational manner"); *see Planned Parenthood*, 2016 WL 3742008, at *6–7 (discussing *Engquist*'s holding and reasoning in the government-as-employer context); *Kelley v. City of Albuquerque*, 542 F.3d 802, 821 (10th Cir. 2008) (stating "the class-of-one theory is not legally cognizable where, as here, a public employee claims that she has been treated differently than other employees.").

Because Ms. Ordonez fails to state an equal protection claim and cannot assert a class-of-one theory in the public employment context, the Court dismisses Ms. Ordonez's Sixth Cause of Action.

**G.   Seventh, Eighth, and Ninth Causes of Action**

Ms. Ordonez only gives the titles for these causes of action with no indication of how she has alleged the elements of her claims.  (2d Am. Compl. 12, ECF No. 62.)  The Court will not search the pleadings to construct a plausible claim for relief on Ms. Ordonez's behalf.  *See Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (noting court cannot search record for facts to create an argument for a pro se litigant).  In her Opposition, Ms. Ordonez attempts to add substance to these causes of action, but the Opposition primarily consists of conclusory allegations lacking the necessary factual context or content to assist the Court in determining the plausibility of these causes of action.   (*See* Pl.'s Resp. 27–34, ECF No. 69.)  Ms. Ordonez asserts her seventh cause of action discrimination and harassment-retaliation, is the same as her second cause of action in her First Amended Complaint, bearing the same name.  (*Id.* 27.)  The Court addresses Ms. Ordonez's allegations of retaliation while analyzing the First and Fifth Causes of Action, *supra* section B(ii).

Ms. Ordonez claims her eighth cause of action, hostile work environment retaliation, is the same as her fourth cause of action in her First Amended Complaint, bearing the same name.

(*Id.* 29.)  To the extent the Eighth Cause of Action alleges retaliatory termination or other adverse employment action for complaints of a hostile work environment, the court addresses Mr. Ordonez's allegation of retaliation while analyzing the First and Fifth Causes of Action, *supra* Section B(ii).  Thus, causes of action seven and eight are merely duplicative.

To the extent the Ninth Cause of Action seeks relief for the District terminating Ms. Ordonez's employment based on false accusations or testimony, (*see* Pl.'s Resp. 30–34, ECF No. 69), the Court cannot consider the few non-conclusory factual allegations added by the Opposition on a Motion to Dismiss.  *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).  Ms. Ordonez seeks to explain these claims by reference to exhibits she attached to the opposition; however, as discussed above, the Court did not consider the exhibits attached to the opposition, as they fall outside of the scope of the Court's review on a motion to dismiss.  *See PayoutOne*, 602 F. Supp. at 1227.  Furthermore, "Utah does not recognize a private right of action for perjury or obstruction of justice."  *Puttuck v. Gendron*, 2008 UT App 362, ¶ 17, 199 P.3d 971.  And prior to making a state law claim for civil conspiracy, the complaint must allege at least one underlying tort claim, which Ms. Ordonez has failed to do.  *Id.* ¶ 21.  The Court recognizes Ms. Ordonez's distress about Mr. Mullins's "misconduct" relating to the destruction of her camera and Mr. Setterberg's alleged false statements to the police and during an unemployment benefits hearing, (*see* Pl.'s Resp. 31, 33, ECF No. 69), but the Court cannot "supply additional factual allegations to round out" Ms. Ordonez's claims for perjury, conspiracy, and obstruction of justice.  *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

Thus, the Court dismisses Ms. Ordonez's Seventh, Eighth, and Ninth Causes of Action for failure to state claims on which the Court could grant relief.

## CONCLUSION

Based on the above reasoning, the Court dismisses Ms. Ordonez's Second Amended Complaint without prejudice for failure to state a claim upon which this Court can grant relief, with the exception of her First Cause of Action for Retaliatory Failure to Transfer based on the February 2011 denial of transfer.  Accordingly, the District's Motion to Dismiss  (ECF No. 62.) is GRANTED IN PART AND DENIED IN PART, as discussed above.

DATED this 28th day of September, 2016.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

27